ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, CA 94612
   Telephone: (510) 637-3680
   Fax: (510) 637-3724
   E-Mail: jonah.ross@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:24-MJ-70098-MAG |
| Plaintiff, | **UNITED STATES' DETENTION MEMORANDUM** |
| v. | |
| ADESOLA KEHINDE, | |
| Defendant. | |

GOVERNMENT DETENTION MEMO
4:24-MJ-70098-MAG

## I. INTRODUCTION

Defendant Adesola Kehinde is a felon—twice convicted of (among other felonies) human trafficking of a minor for commercial sex—who now faces multiple open cases for possession of a firearm.  In the instant case, Kehinde was found in possession of a loaded semiautomatic pistol while in his car with a 17-year-old girl who acknowledged being a sex worker.  Despite the restrictive conditions of both parole and probation, Kehinde continues to commit crimes and to acquire firearms.  Kehinde's convictions, open cases, and more importantly, the conduct underlying these cases, leave no doubt that he has no intention of following any court orders and that he poses a serious danger to the community.  It is imperative that he remain detained pending trial.

## II. BACKGROUND

### a. Kehinde, A Convicted Felon on Parole and Probation for Two Separate Convictions for Sex Trafficking of a Minor, Possessed A Loaded Firearm While in a Car with a 17-Year-Old Girl

In the instant case, the United States charged Kehinde by complaint with a violation of 18 U.S.C. § 922(g)(1) – felon in possession of a firearm and/or ammunition.  As detailed in the affidavit in support of the complaint, on January 9, 2024, members of the Alameda Police Department responded to Kehinde's residence to conduct a parole and probation compliance search.  As detailed below, Kehinde had previously been convicted of human trafficking of a minor for commercial sex (twice), criminal threats (twice), and robbery.

The officers located Kehinde in his apartment complex's parking lot, seated in the driver's seat of his Tesla (a car registered to him, and which officers had seen him driving prior to the day of his arrest).  In the rear seat of the car, officers found a 17-year-old girl, whom an agent with the Federal Bureau of Investigation recognized as a victim in a prior sex trafficking investigation.  The special conditions of his parole prohibited Kehinde, who is 37 years old, from having any contact with any minor females he knew or reasonably should know is between the ages of 13 and 18, and the terms of his probation prohibited him from being in the presence of any child under the age of 18 years unless under the supervision or a responsible adult who knows that Kehinde is a registered sex offender.

In a bag in the rear seat of the car, officers found jeans that Kehinde had been photographed

wearing the night before. Within those pants, officers located a loaded Glock semiautomatic pistol, as well as a wallet containing Kehinde's identification. In the bag in which the pants were found, officers located other forms of identification for Kehinde.

According to the report from the Alameda Police Department, when the minor girl gave police consent to look at her cell phone, they observed a photo of Kehinde and the girl kissing on a couch. They concluded that the girl had been staying at Kehinde's apartment for the several days prior to Kehinde's arrest. The girl also admitted that she had been working as a sex worker, but she stated that she did not work for Kehinde.

### b. During a Parole Search in May of 2023, Officers Located a Pistol in the Glove Box of a Tesla Kehinde Had Been Observed Driving

On May 17, 2023, parole agents conducted a compliance search of Kehinde's residence and vehicle in Alameda. Kehinde's girlfriend was also present. Parole agents had previously seen both Kehinde and his girlfriend driving a white Tesla, and they observed the same white Tesla parked in front of Kehinde's residence. When the agents asked for the keys to the car, Kehinde did not respond, and his girlfriend stated she did not have a key. The agents eventually located the Tesla's key card in Kehinde's wallet. The agents used the key card to access the Tesla, and in the glove compartment, they found a loaded Smith & Wesson semiautomatic pistol.

### c. Kehinde Is Currently Charged in Solano County with Pandering By Encouraging, Attempted Pimping, Evading an Officer, and Felon-in-Possession of a Loaded Firearm

In Solano County Case No. FCR356431, Kehinde faces the following felony charges:

- pandering by encouraging (Cal. Penal Code § 266i(a)(2)),
- attempted pimping (Cal. Penal Code § 664/266h(a)),
- evading an officer with willful disregard for safety (Cal. Vehicle Code § 2800.2(a)),
- possession of a firearm by a felon (Cal. Penal Code § 29800(a)(2), and
- possession of ammunition by a felon (Cal. Penal Code § 30305(a)(1)).

On January 28, 2021, the Vacaville Police Department conducted an undercover operation to identify and arrest human traffickers. Kehinde, who was then on active parole, responded to an online prostitution advertisement posted by an undercover officer (the "UC"). Kehinde and the UC continued

to communicate via text message and voice calls. The UC informed Kehinde that she was working as a prostitute after recently moving to California. Kehinde stated that he already had two girls working for him as prostitutes, and he offered to set up new social media accounts for the UC, to post her online prostitution ads, and to obtain business cards for her. He repeatedly told the UC that she would enjoy his "Program," claiming he was familiar with the prostitution circuits and could find high-end clients for her. Kehinde stated his "choose up" fee was "five stacks." (A "choose up" fee is a slang term for a fee that a prostitute must pay a potential pimp for the right to work for him, and "five stacks" is slang for $5,000.)

The UC and Kehinde agreed to meet by a hotel in Vacaville, and when Kehinde parked in a nearby parking lot, Solano County Sheriff's deputies attempted to conduct an enforcement stop on Kehinde's vehicle. Kehinde drove away at a high speed and jumped a curve to exit the parking lot, however, and the deputies pursued. Although it was nighttime, Kehinde kept his vehicle lights off and accelerated to roughly 75 miles per hour, weaving in and out of traffic. Eventually, Kehinde collided with another motorist's vehicle, causing injury to the driver, and then exited his car and fled the scene before being arrested. A loaded Glock pistol was found where Kehinde exited his car.

Upon searching Kehinde's phone, officers found photos of Kehinde holding large stacks of cash and photos indicating his use of various websites used for advertising commercial sex workers.

    **d.**    **Kehinde's Prior Convictions (For Which He Was on Parole and Probation at the Time of His Arrest) Include Two Convictions for Sex Trafficking of a Minor and Two Convictions for Criminal Threats**

At the time of his arrest for the instant offense, Kehinde was on active parole and probation for two separate felony convictions, each involving trafficking of a minor for commercial sex and criminal threats.

    **1.**    **2022 Conviction for Sex Trafficking of Minor and Criminal Threats**

On November 22, 2022, Kehinde pleaded no-contest in Alameda County to the felonies of human trafficking of a minor for commercial sex (Cal. Penal Code § 236.1(c)) and criminal threats (Cal. Penal Code § 422).

At around 1:30 a.m. on November 21, 2021, Alameda Police Department officers responded to

Kehinde's residence in Alameda (the same residence at which the instant offense occurred) after a social worker reported that he was in contact with a 16-year-old female human trafficking victim who had alerted him that she was in danger and needed police assistance. She informed him that she was currently with her "pimp" at his apartment in Alameda, and he had two guns. (No guns were recovered.)

The social worker, who was on the phone with the victim, was able to merge the call with police on scene, who asked the victim to knock on a wall or come to the door so that the officers could confirm she was inside. The victim stated that she could not do so, however, because she feared for her safety and had barricaded herself in the bathroom.

Officers knocked on the front door and announced their presence. At first, Kehinde spoke to the officers but refused to open the door and repeatedly walked away from the door and disengaged with the officers. At one point, he told them that he and his female friend were inside having dinner. When the officer asked to speak to the female friend, Kehinde attempted to change his voice to sound like a woman.

Kehinde eventually opened the door and officers placed him in handcuffs. Officers located the victim in the bathroom. She was uninjured. After learning that Kehinde was on parole, the officers conducted a parole search of the residence. Officers located multiple pairs of high heeled boots and "intimate/risqué" women's clothing in one of the bedrooms. Kehinde also had $966 in cash in his pants.

Officers spoke with the victim, who informed them that she had met Kehinde two weeks earlier through Instagram. Kehinde drove to Vallejo to pick up the victim from her foster home, and she agreed to go with Kehinde, who drove her to his residence in Alameda. Over the next two weeks, Kehinde would wake her at 5 a.m. and drive her to Oakland where she would engage in sex for money, mostly at various hotels. She estimated she had sexual intercourse with 140 men over those two weeks. Each time, the "buyer" would give her cash, which she turned over to Kehinde.

Kehinde raped the 16-year-old victim each day over the two weeks. On one occasion, she tried to leave, but Kehinde preventing her from leaving and slapped her across the face. She was aware that Kehinde typically carried a gun, which made her fear for her safety. (After being driven to the hospital, the victim declined to take a SART exam, stating that it was pointless because she had showered since

having intercourse with Kehinde.)

The officers Mirandized Kehinde, and he stated the following: He had met the victim through Instagram two weeks earlier, and he picked her up in Vallejo. Her mother asked him to take the victim because she did not have a place to live, and so Kehinde agreed to let her live with him. He said he believed she was 21 years old, and she had shown him identification. He denied having sex with the victim.

### 2. 2015 Conviction for Sex Trafficking of Minor, Robbery, and Criminal Threats

On September 25, 2015, Kehinde pleaded guilty in San Francisco County to the felonies of human trafficking of a minor for commercial sex (Cal. Penal Code § 236.1(c)), robbery (Cal. Penal Code § 211), and criminal threats (Cal. Penal Code § 422). He was sentenced to six years in state prison.

According to the San Francisco Police Department incident report, the 17-year-old victim informed officers that in late July of 2014, she met Kehinde, who introduced himself as "Sholly King" and told her he would be her pimp. Kehinde used photos from the victim's phone to set up a page for her on a commercial sex website. After she met with two male subjects and performed sexual acts for money, Kehinde sent her an image of a firearm to coerce her into paying his "cut."

In the early morning of July 26, 2014, Kehinde and a female accomplice picked the victim up in a car in San Francisco. The accomplice drove, and Kehinde sat in the rear. After they drove across the Bay Bridge, Kehinde reached from the back seat and put his arm around the victim's neck and threatened to strangle her. He pointed a gun at her and demanded $500 as his cut for her sex work with the two males. The victim feared for her life and believed if she complied, Kehinde would take her home. Kehinde and his accomplice discussed different ways of killing the victim, and Kehinde slapped her three times on the side of the face.

Later that morning, they drove to a motel in Vallejo. There, the victim engaged in sex acts with both Kehinde and his accomplice because she was afraid that they would hurt or kill her if she refused. Later that day, Kehinde and the accomplice took the victim to her residence where she retrieved $500 and gave it to the accomplice.

After Kehinde's arrest and subject to a search warrant, officers searched his phone and found

photographs in which the minor victim and the accomplice were both nude in a hotel.

## III. LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV. KEHINDE'S CONTINUOUS CRIMINAL CONDUCT PROVES THAT HE IS A DANGER TO THE COMMUNITY AND A FLIGHT RISK

The United States submits that no condition or combination of conditions will protect the public or assure Kehinde's appearance at these proceedings should he be released from custody.

### a. The Nature and Circumstances of the Offense Weigh in Favor of Detention

Kehinde's possession of a firearm, while on both parole and probation for separate felony convictions and while having a separate open case for possession of a firearm, makes clear the danger he poses to the community. Despite repeated arrests and convictions, Kehinde continues to show that he is unwilling to stop acquiring loaded, semiautomatic weapons. But it is even more concerning that

Kehinde continues to possess these firearms either in the presence of young girls who are admitted sex workers, or while trying to meet up with a person he believed was a sex worker, as in the case of his arrest in Vacaville.

The nature and circumstances of the offense leave no doubt that, if released from custody, Kehinde would continue to acquire semiautomatic firearms and associate with underage female sex workers.

      b.    **Nature and Seriousness of the Danger to the Community**

Kehinde's repeated conduct proves that he engages in violence, will do anything to escape capture by police—including leading them on a high-speed nighttime car chase ultimately resulting in injury to an innocent third party—and will acquire another firearm if released, regardless of how much supervision the Court orders. Given his conduct, there is reason to believe that his release could have deadly consequences. And further, there is a clear risk to young, vulnerable girls, given Kehinde's repeated efforts to traffic girls into sex work, despite parole and probation conditions that prohibit him from associating with minor girls at all. Despite the supervision provided by parole, by his own admission, Kehinde has continued to engage in enticing others into sex work.

      c.    **The Weight of the Evidence Against Kehinde Is Overwhelming**

The evidence against Kehinde is overwhelming. The pistol was found in pants Kehinde wore the night before, which were located in the back seat of the car he was driving (a car registered to him), and several pieces of identification were located either in the same pants or in the bag in which the pants were found.

      d.    **Kehinde's Criminal History and Prior Conduct—Including While on Parole and Probation—Demonstrate the Danger and Flight Risk He Poses**

It is Kehinde's repeated criminal conduct that demonstrates the danger he poses to the community and proves that he has no intention of complying with any court orders. Despite the restrictions of parole and probation, Kehinde continues to commit crimes, to acquire firearms, and to be found either with young female sex workers or to be trying to meet young girls to engage them in sex work. He is a danger both to the public at large, and specifically, to vulnerable young girls.

Not only does the defendant present a serious risk to the community, but he is also a flight risk.

He has made clear, specifically by fleeing from police in Vacaville, that he is willing to put others' lives at risk to escape capture. Now, he faces federal prosecution, and the prospect of a federal conviction and years in a federal prison provide the defendant with significant motivation to escape accountability.

Finally, there is simply no viable place to which the defendant can be released. Kehinde already lives in an apartment that was approved by parole, and yet he has continued to commit crimes and violate the terms of his parole out of this same residence.

## V.  CONCLUSION

For the reasons set forth above, the defendant is a danger to the community and a flight risk. The Court should therefore detain the defendant pending trial.

DATED:   February 22, 2024                                         Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Jonah P. Ross*
JONAH P. ROSS
Assistant United States Attorney